We move to the sixth case this morning, which actually has been dismissed, and now to the seventh case, U.S. v. Ramos. May it please the Court, my name is Mike Kubik, together with my co-counsel, Justin Lewis, we represent Appellant Sharon Ramos. We're both third-year law students at the Notre Dame Law School under supervision of Attorney Robert Palmer. Your Honors, I will address the position of trust issue. My co-counsel will address the obstruction of justice issue. Your Honors, in finding a position of trust, this Court requires a case-specific, fact-intensive inquiry into the nature and characteristics of the position to see if there's more than an ordinary degree of reliance on the defendant's honesty and integrity. And, Your Honors, those facts are absent here, and the District Court clearly erred in finding otherwise. As the official position description states, claims representatives are non-supervisory, non-sensitive, low-risk positions. And this is borne out by the trial testimony of Ms. Ramos' direct supervisor, Ms. Sylvia Feliciano. Ms. Ramos acted as essentially... a position of trust enhancement ruling. The Court laid out the reasoning for believing it. Did the Court have to accept her supervisor's testimony? Your Honor, the Court has to look to the specifics of how the claims representative position actually operates. Why wasn't it sufficient for the Court to do what he did here and rely heavily on the job description and not rely on the testimony? The position description, Your Honor, is only general information about the position generally. And as this Court, as clear from this Court's precedent, general information about a position, a class of positions, about industry information about the position is insufficient. There must be specific information about how that position actually works relative to the victim. Why isn't the district court judge in the best position to make that determination after having presided over the trial? Maybe he thought that general description, and it seems like he did based on his ruling, that the general description provided the specific information here. Your Honor, while the district court may be in that position to look at the evidence, here we are reviewing for clear error. And it was clear error to ignore that trial testimony that spoke to the specifics that fleshed out exactly what that general position description spoke to. What if the district court judge thought that the job description had more credibility than what the trial testimony was? That here, it is still clearer to rely on only the general information, as is evident in cases such as United States v. Fuchs, where this Court says that with mortgage brokers, for instance, mortgage brokers may hold a position of trust. But whether a specific mortgage broker in a particular case is holding a position of trust, there has to be an inquiry into the specific facts. One of the specific facts here was about a half million dollars, wasn't it? Your Honor, yes, that was. Doesn't that make it maybe a little bit more than just a routine job? Your Honor, what that shows is, in effect, a fraud. That does not necessarily show an abusive position of trust. Well, it shows somebody that has the ability to encumber the government for a half million dollars. Your Honor, the key inquiry with the position of trust is whether there's more than the ordinary degree of reliance on the defendant's honesty and integrity. It's about that discretion. And here, what Ms. Reynolds was capable of doing, what she was directed to do by the comprehensive rules, policies, and procedures of the Social Security Administration, was to speak with claimants, was to ask questions about objective, verifiable facts, like, how many people are you living with? Ms. Kubik, we have said a number of times that district judges dealing with close issues under the guidelines should, in essence, articulate their judgment under 3553A, and we have that from the district judge here, saying, even if I'm wrong about the abuse of trust issue, the sentence would be the same. So why isn't this all perfectly harmless? Your Honor, the district judge. And also, as I understand it, the sentence imposed was below the guideline range with and without that enhancement. Your Honor, to address the harmless error issue. First, as to the 3553A statement, what the district court stated, and this is pages 31, 32 of the short appendix, was essentially a vague appeal to the 3553A factors as a whole. This isn't a detailed statement of going through all those factors, and moreover, the district judge's further statement of, you know, we would also consider, in reaching the same sentence, the public's, you know, view of a possible undermining of the government's function. Well, here, this is still necessarily intertwined with the position of trust in court. This isn't an independent ground to uphold that sentence. But in looking at the 3553A factors, I don't think you can just look at the point in the transcript where the judge imposed the enhancement and said, even if I'm wrong on this, under 3553A, I would still impose the same sentence. I think you have to look at the entire transcript where the judge has already gone into detail on the 3553A factors. How do you react to that? Your Honor, the key here is, really, where is that detailed statement? And here, it's about the detailed statement as to the position of trust, as to whether this particular enhancement would still be applied here. And that's not what the district judge did. What the district judge did was specifically as to the 3B1.3 enhancement, a vague appeal to 3553A, and further into why not just interpret that as the judge thinking, saying, I think the sentencing commission is too narrow in the scope of this abusive trust enhancement. I would do the same thing. Your Honor, if that was what the judge was thinking, the judge should have made that detailed statement. But here, that's absent from the ground. That's pretty close to what he said. He said, it doesn't, through your conduct, you violated the trust that the SSA placed in you, and in turn, the trust that the public places in its government to handle its funds responsibly. If the enhancement did not apply, then the guidelines would fail to account for that factor, which the court would consider in reaching the same sentencing. It seems pretty clear to me. Respectfully, your Honor, that statement there, in order for this to be harmless error, there needs to be an independent statement. There needs to be a properly detailed independent statement. Where do you get that? This is evident in cases such as Burns. And this is noted in our brief in the harmless error section. Where the independent grounds here, there are none. That statement of the public's trust is necessarily intertwined with the position of trust inquiry. And were this court to properly direct the district court that there is no position of trust here, there's no position of trust to be abused, that factual predicate drops out. And we don't have an independent ground to uphold that same two-level sentence. And, your Honor, if there are no further questions, I'd like to cede the rest of my time to my co-counsel. Fine. Thank you. Thank you, your Honor. May it please the Court. Justin Lewis for Appellant, Chair and Ramos. The district court plainly erred in applying the Section 3C1.1 Enhancement for Obstruction of Justice based exclusively on Ms. Ramos' general denial of guilt. And because the record does not independently support application of the enhancement, this court should vacate Ms. Ramos' sentence and remand the case for resentencing. Mr. Lewis, she has a lot, she goes a lot further in her testimony than just saying I'm innocent, right? She provides a detailed account of the interview that led to her, at least what the government offered as her confession, and disputes the agent's account of that. And her trial testimony is pretty detailed. So I don't understand your argument that this is just penalizing somebody, in essence, for denying guilt. Yes, your Honor. Your Honor, Ms. Ramos' testimony and other parts of the record not cited by the district court in its application of the enhancement did go beyond what we're characterizing as a general denial and what we think is a general denial. What the district court relied on and demonstrated on in our short appendix on page 27 was Ms. Ramos' false denial that she engaged in the conduct with which she was charged. The district court never identified the statements that the government identifies as alternative bases for application of the enhancement. Was there an objection to this enhancement in the district court? No, your Honor, there was not. So if I understand your position correctly, you're saying that the district judge should have gone into more detail in explaining all of the specifics of her perjury in the trial to deal with an issue that was not disputed. Your Honor, our position, respectfully, is not quite that. It's that relying exclusively on those general denials was error, regardless of whether or not there was a contemporaneous objection. And the fact that there was no contemporaneous objection means that this court reviews for plain error. But in reviewing for plain error, given that there was no objection, can't we look at the entire record as opposed to just what the judge said when addressing the obstruction of justice? Yes, your Honor. You can look to the entire record to see if... And in light of the entire record, I think you've agreed that there were some very specific denials to information. The judge just didn't rely on them when he addressed the obstruction of justice because nobody was objecting to it. Your Honor, it's our position that the judge didn't rely on those because the judge did not think that those were willful. Dunnegan requires that in order to satisfy... What's the basis for that? So there was significant testimony, particularly on page 536 of the trial transcript. Ms. Ramos testified to her numerous car accidents that had resulted in many head injuries. And the district court credited that testimony. You can see in the short appendix at page 29, the district court notes the head injuries that she had testified to and notes that they had contributed likely to her errors in judgment. The PSR also details Ms. Ramos' significant history of post-traumatic brain injury and that she was being treated for post-traumatic brain injury syndrome. Additionally, Ms. Ramos submitted an addendum to the PSR where she discussed the effects of these injuries on her cognitive ability and on her memory. And the district court credited that testimony. And so the question for this court in addressing whether those alternatives... But the district court credited everything in the PSR, not just those additions. Yes, Your Honor. And the PSR was pretty detailed about the contradictions between her trial testimony and the other evidence, right? About the agent's testimony, about the interview in particular. So did the judge need to repeat those details? The judge did not need to repeat those details. Rather, what the judge actually said at trial, which is not dispositive, but which is relevant to this court's review of the entire record, shows at least some significant tension. On page 27 of our short appendix, where the judge says that he was applying the obstruction enhancement because Ms. Ramos falsely denied engaging in the charged conduct, we think that that indicates that the district court was applying the enhancement solely because Ms. Ramos generally denied guilt. And that was so because the district court thought that Ms. Ramos could not form the requisite intent, willful intent or specific intent to obstruct justice, that it was quite underdone. That can't be what the district court judge found because he imposed the obstruction of justice enhancement. In order to impose it, he had to make a determination that she was willfully testifying falsely. Your Honor, so in making that... In making that or getting to that conclusion, we're drawing a line between a general denial of guilt and a specific denial of facts or events which constitute telling the jury a false and material story. And the intent that one would hold, and the district court, I think, recognizes this when it says that it's implying the enhancement because she willfully denied this conduct and that the willfulness is shown because she denied a long pattern of conduct. Specific denials or events are not made willfully because of the denial of a long pattern of conduct. Rather, they're denials of those specific events. And the district court... led to these very specific denials, the very different version of the interview that she described? Defense's position is that Ms. Ramos... that the district court was uncertain about whether those were made with the requisite willful intent because of the cognitive impairment, because of the memory issues. And this court... It sounds like sheer speculation to me. Well, this court under Parker and under Jackson reviews for whether or not the court was certain or uncertain about the will... the district court, the sentencing court, was certain or uncertain about the willfulness of certain statements that are made. And in Parker and in Jackson, it found that because of some statements by the district court, this court could not be certain that the district court found that element of willfulness with respect to the statements. Can you remind me whether in Parker and Jackson the issue was raised before the district court? Which issue, Your Honor? Whether the obstruction adjustment was appropriate in general and whether the deception was willful. Yes, Your Honor. I believe in both of those cases the obstruction enhancement was challenged at the sentencing hearing. However, in this case, we believe that those cases indicate that where the district court is uncertain, and statements show that in this record, on review of the record in its entirety, this court should note that the district court was in the best place to make those determinations, that it was unsure about whether specific denials were made with a required intent, and that given that it relied exclusively on general denials, which are legally insufficient, the obstruction of justice enhancement was unwarranted. Your Honors, if there are no further questions. Thank you. Thank you, Counsel. May it please the Court. Luke Rauner for the United States. The trial court committed no error in applying the two enhancements here, starting with the abusive position trust enhancement. The question was whether Ms. Ramos occupied a position of trust. That was subject to an objection below, and so the trial court, the review is a clear error review, and as Your Honors know, it's a highly deferential review to the trial court who was the fact finder in that scenario. In my brief, I set out a panoply of cases, Jocano, Hernandez, Diehl, Guerin, Cruz, that deal with the situation of the defendant who's an employee versus a supervisor and the special relationship of trust that the supervisor places on the defendant. And in those cases, positions of trust were found by the courts, and so it should be here as well. Ms. Ramos had a position as a claims manager where she would analyze a claim's financial situation, living arrangements, make adjudications as to a claim's eligibility for disability payments. As the trial court said on the record, her duties required the use of judgment in interpreting and applying applicable rules. Her decisions were binding on the African-American Social Security Administration and led to the payment of many thousands of dollars, as Judge Kaney noted earlier. And her work was subject to relatively little supervision. The district judge in making the abusive position of trust determination relied heavily on the job description, did not address the testimony of her supervisor. What impact should that have on the analysis? I think the judge can look at all of it, including the job position, which was presented to the court as evidence at sensing. But I think the testimony during the trial also more than adequately supports the finding that this was a position of trust. The testimony of Ms. Feliciano, primarily pages 224 to 238, that's where Ms. Feliciano described just what the duties of Ms. Ramos would have been in terms of analyzing a claimant's information and making adjudications as to eligibility. So I think there's more than adequate evidence from the testimony itself to support that this was a position of trust. I think the two cases cited by defendants where a position of trust was not found are easily distinguishable, as I mentioned in the brief, because they're no longer an employee-employer scenario, but rather one where the employee had the freedom to act because the supervisor herself was acting criminally, and the other one was there was an arm's-length transaction. Sorry, the first case was the Hathcote case, and the second was the Fuchs case where there's an arm's-length relationship between the two parties. So there was no position of trust there. Even so, as Judge Hamilton referenced earlier, in this case there was harmless because the district court stated on the record that even if this was a difficult guidelines question, it would have no impact on the sentence and explained that even if the guideline range had been calculated differently, it would still impose the same sentence. I was the trial attorney below, and I was trying to make that point, which I think the court recognized, that this is a unique situation where not only was there an abuse of trust of employee to her employer, but rather she was a public servant and her offense is of a more serious nature than simply an employee embezzling from the employer. Here there was also betrayal of the public trust, which the court noted. Was there any evidence that the plaintiff took any, or the defendant took any of this money for herself? No, no evidence whatsoever. This was entirely a Robin Hood scenario. That's what she said at trial, and that's what she had said... I'm sorry, that's what she said to the agent when the agent was interviewing her. And the judge, of course, took that into account when giving a below-guidelines sentence. So anyways, because the court made clear that it would impose the same sentence even absent the position of trust enhancement, any error here is harmless. Moving to the second issue, obstruction of justice, there was no objection below, and therefore, as your honors know, this is a review of plain error. The court can look at all the record, and it's apparent here that Ms. Ramos did commit perjury by her lengthy testimony at trial, and I set out in the brief the different ways in which her testimony contradicted the testimony of Agent Yonkis, the testimony of the two claimants who said they were bothered by the extra money they got, and the testimony of her supervisor, Ms. Feliciano. Are there no other questions? I ask that the judge resolve. Thank you, counsel. Mr. Kubik, you have two minutes for your rebuttal. Your honors, one point on rebuttal. Specifically to the government's contention  that testimony from 224 to roughly 238 shows an interpretation of policy, a discretion of judgment. That's not what that testimony shows. What that testimony shows, as is noted in our reply brief, is something akin to a decision tree. It's something akin to asking rote questions of how many people do you live with, how much rent are you contributing, what kind of rent are you contributing, and then putting those objective, verifiable facts into a computer system, and that computer system then determines what benefits, if any, that claimant is eligible for. Moreover, any kind of change to a claimant's file, any of these types of changes, require supporting documentation, require things like lease agreements, like loan agreements. This is effectively a data entry position, your honors. This isn't something of high discretion that is required. This isn't something like the professional or managerial discretion that the guidelines comment requires. Well, it's enough discretion, as I mentioned in your first go-around, that involved half a million dollars. That shows a lot of discretion, it seems to me. Your honor, as this court noted in United States v. Fuchs, every fraud contains some element of misplaced trust. And that's why, in order for this particular enhancement to apply, there needs to be more than an ordinary degree of reliance on the defense's honesty and integrity. And here, what we have is that kind of an ordinary fraud. What we have here is the ordinary reliance... Well, it's a little different. It says it's a fraud against the government. Typically, it would be something where she would gain something. She didn't, as a response to Judge Ample's question earlier. Correct, your honor. Ms. Ramos did not actually receive any of the money. This was, as was noted, that kind of Robin Hood-type activity. And here, the position that she held with respect to the public, yes, that is something to consider. It's not dispositive in and of itself, however. Your honor, I see my time has expired. You can continue. Finish. Do you have anything else? That was all, your honors. All right. Thank you. Thank you very much. Thanks to both counsel. Thanks to the University of Notre Dame and the law school.